**J. Lee DOUGLAS, D.D.S., Appellee,**

v.

**STATE of Tennessee, Appellant.**

Supreme Court of Tennessee,
at Nashville.

April 22, 1996.

policy or "retroactive coverage" from another insurer.

Phillip W. Kendrick, Kendrick & Kendrick, Brentwood, for Appellee.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, Sandra E. Keith, Assistant Attorney General, Nashville, for Appellant.

## OPINION

DROWOTA, Justice.

In this case involving the commercial speech doctrines of the First Amendment, the Tennessee State Board of Dentistry (Board) appeals from the Court of Appeals' judgment vacating the public reprimand issued by the Board to J. Lee Douglas, a licensed dentist, for violation of the Board's advertising rules. This case presents the following issue: whether the Board may require Douglas—a general dentist who practices orthodontics but is not specially certified as an orthodontist—to include in advertisements of his orthodontics practice the disclaimer that he is performing the services as a general dentist, when the Board has not presented any evidence that the public has been harmed by advertisements without the required disclaimer. For the reasons that follow, we reverse the judgment of the Court of Appeals, and reinstate the public reprimand issued by the Board.

### *REGULATORY BACKGROUND*

Tenn.Code Ann. § 63–5–107 provides that "it is unlawful for any person to practice dentistry ... in this state, except those who are now licensed or certified pursuant to law and those who may hereafter be licensed or certified and registered pursuant to this chapter." Responsibility for licensing members of the dental profession rests with the Board. Tenn.Code Ann. § 63–5–101. In addition to conferring licenses upon general dentists, the Board is authorized to certify specialists in certain fields. Tenn.Code Ann. § 63–5–112 provides, in pertinent part:

No licensed dentist shall hold himself out to the public as a specialist, or being specially qualified in any particular branch of dentistry, or as giving special attention to any branch of dentistry, or limiting his practice to any to any branch of dentistry, until he had complied with the additional requirements established by the board, and has been issued a certificate by the board authorizing him to do so. The board is authorized to certify specialists in the following branches of dentistry:

(1) Oral surgery and/or oral maxillofacial surgery;

(2) *Orthodontics;*

(3) Periodontics;

(4) Prosthodontics;

(5) Pediatric dentistry;

(6) Endodontics;

(7) Oral pathology; and

(8) Any other branch of dentistry hereafter recognized and approved by it.

(Emphasis added).

The fact that a licensed general dentist does not possess a certification in one of the above-named specialities does not prevent him or her from practicing a speciality. If such a general dentist chooses to advertise concerning a specialty branch of his or her practice, however, the advertisement is governed by Board Rule 0460–2–.10(5)(b), which provides as follows:

A licensee who possesses a verifiable combination of education and experience is not prohibited from including in his practice one or more specialty branches of dentistry. However, any such advertisement of such practice shall:

1. Not use the terms specialty, specializing, specialist, or practice limited to; and

2. *Contain the statement "the services are being performed or provided by a general dentist," and such statement must appear or be expressed in the advertisement as conspicuously as the branch of dentistry advertised.*

(Emphasis added).

This requirement, and all others concerning advertising by the dental profession, is explained in the Board's "Policy Statement" which appears in the preamble to the administrative regulations. That statement provides:

The lack of sophistication on the part of many members of the public concerning dental services, the importance of the interests affected by the choice of dentists and the foreseeable consequences of unrestricted advertising by dentists, which is recognized to pose special possibilities for deception, require that special care be tak-en by dentists to avoid misleading the public.

Dentists must be mindful that the benefits of advertising depend upon its reliability and accuracy. Since advertising by dentists is calculated and not spontaneous, reasonable regulation designed to foster compliance with appropriate standards serves the public interest without impeding the flow of useful, meaningful, and relevant information to the public.

Finally, the Board is empowered to punish licensees who violate its rules. Tenn.Code Ann. § 63–5–124(a).

### FACTS AND PROCEDURAL HISTORY

J. Lee Douglas has been licensed to practice as a general dentist in Tennessee since 1984. Dr. Douglas' practice includes orthodontics, and his business cards read "J. Lee Douglas, DDS, Family Dentistry, Cosmetic Dentistry, Orthopedics/*Orthodontics,* TMJ Dysfunction." Moreover, the language "J. Lee Douglas, D.D.S., Dentistry, TMJ, *Orthodontics* " is printed on the doorway to his office. (emphasis added). Dr. Douglas does not, however, possess specialty certification as an orthodontist.

In February 1991 the Tennessee Department of Health, Division of Health Related Boards, filed a notice of charges against Dr. Douglas, alleging that he had violated Board Rule 0460–2–.10(5)(b) by failing to state on his business cards and doorway that the advertised orthodontic services "are being provided by a general dentist." Dr. Douglas answered the charges by arguing, *inter alia,* that the rule and related statutes violated his rights to free speech as guaranteed by the First Amendment to the United States Constitution and Article I, § 19 of the Tennessee Constitution. Dr. Douglas also argued that the words on the card and door "were neither actually or inherently deceptive, nor were they false, fraudulent, or misleading."

After a hearing, the Board found Dr. Douglas in violation of the rule. It explained its conclusion in a series of special verdict questions propounded to it by the Depart-

ment of Health, the most important of which are as follows:

. . . . .

8. Q: Did the respondent fail to include a disclaimer on his business cards which indicated he was not a specialist in orthodontics or that the services offered are being performed or provided by a general dentist?

A: Yes.

9. Q: Is the advertising by a general dentist that he performs orthodontics as part of his practice without indicating that he is not a specialist misleading or deceptive to the public?

A: Yes.

Why?

If a person advertises a specialty, a layperson would assume that a specialist is practicing that area of dentistry but with a disclaimer, they would not.

. . . . .

Based upon its findings, the Board issued a public reprimand to Dr. Douglas.

Dr. Douglas appealed from the Board's decision to the Davidson County Chancery Court. That court affirmed the Board's decision; and specifically rejected his constitutional argument, reasoning as follows:

This Court finds unpersuasive the petitioner's claim that Rule 0460–2–.10(5)(b), as applied to him, is unconstitutional. The Court notes that the regulation at issue does not ban or prohibit petitioner's advertising, but rather requires him to use specified disclaiming language. The court further notes that the regulation of the practices of dentistry and orthodontics implicate important issues of public health and safety, in that these practices involve performance of procedures, often invasive in nature, requiring special knowledge and skill. The Court also notes that the potential for self-deception is self-evident in the case presented; i.e., where the public is presented with an advertisement for the provision of orthodontic services and is unaware of the fact that the practitioner is not certified in orthodontics by the Tennessee Board of Dentistry. Therefore, the

Court is satisfied that the public interest would warrant the disclaimer required by Rule 0460–2–.10(5)(b) in this case. The Court has examined the case law presented to it by the petitioner ... and is satisfied that this present decision is in accordance with that case law.

Dr. Douglas then appealed to the Court of Appeals, which reversed the judgment of the Board and the chancery court. The Court of Appeals stated that recent commercial speech cases of the U.S. Supreme Court, namely *Ibanez v. Florida Department of Business and Professional Regulation, Board of Accountancy,* 512 U.S. ——, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994) and *Edenfield v. Fane,* 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), require governmental bodies seeking to place restrictions on commercial speech to prove that the harms sought to be prevented are real and that the regulations will alleviate such harms in a direct and material way. The Court concluded that because the Board merely cited the "policy statement" in support of Rule 0460–2–.10(5)(b), and did not adduce any evidence that the public had actually been harmed by an advertisement of a specialty practice that did not include the disclaimer, the rule was unconstitutional as applied to Dr. Douglas.

The Board applied for permission to appeal pursuant to Rule 11, Tenn.R.App.P. We granted that application to address this issue of first impression.

### ANALYSIS

It is well-settled that commercial speech such as advertising is afforded a qualified protection under both the federal and state constitutions. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *H & L Messengers, Inc. v. City of Brentwood,* 577 S.W.2d 444 (Tenn.1979). The rationale for this qualified protection is that only truthful and legitimate information benefits consumers in the commercial realm; therefore, states are allowed to regulate commercial speech to a significantly greater degree than other areas of expression. *Virginia*

*Pharmacy Board,* 425 U.S. at 772, n. 24, 96 S.Ct. at 1830, n. 24.

In *Central Hudson Gas v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the United States Supreme Court held that commercial speech should be subjected to intermediate—as opposed to strict—scrutiny; and it enunciated the following test for determining the constitutionality of such speech:

> For commercial speech to come within that provision [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we must ask whether the asserted government interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351.

■■■ Subsequent cases have clarified the *Central Hudson* analysis; it is now settled that the State may completely ban commercial expression that is either actually or inherently misleading without further justification. *Edenfield v. Fane,* 507 U.S. 761, 768–70, 113 S.Ct. 1792, 1799, 123 L.Ed.2d 543 (1993) ("our cases make clear that the State may ban commercial expression that is fraudulent or deceptive without further justification"); *Peel v. Attorney Registration and Disciplinary Commission,* 496 U.S. 91, 111, 110 S.Ct. 2281, 2293, 110 L.Ed.2d 83 (1990) ("State may not ... completely ban statements that are not actually or inherently misleading"); *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982) ("Misleading advertising may be prohibited entirely."). However, when the State seeks to ban commercial speech that is not actually or inherently misleading or deceptive, the State must prove that (1) the harms that it seeks to rectify by the regulation are real, not purely hypothetical; and (2) that the regulation directly and materially advances the State's interest in preventing the specific type of deception at hand. *Edenfield,* 507 U.S. at 770–71, 113 S.Ct. at 1800.

■■■ Dr. Douglas argues that these well-settled propositions apply to the Board rule at issue in this case. He contends that since the Board presented no evidence that any advertisement without the disclaimer served to mislead the public, but merely relied upon the "policy statement," the board failed to carry its burden of justifying the rule. As support for this argument, Dr. Douglas cites *Edenfield, supra.*

In *Edenfield* the U.S. Supreme Court struck down a Florida rule prohibiting CPAs from directly soliciting clients. The Court's analysis focussed on the Florida Board of Accountancy's proffered justification for the rule—that it was necessary to ensure CPA independence during audits of their clients and to prevent overreaching by CPAs. In concluding that this justification was inadequate, the Court stated:

> The [Florida Board of Accountancy] has not demonstrated that, as applied in the business context, the ban on CPA solicitation advances its asserted interests in any direct and material way. It presents no studies that suggest personal solicitation of prospective business clients by CPAs creates the dangers of fraud, overreaching, or compromised independence that the Board claims to fear. The record does not disclose any anecdotal evidence, either from Florida or another State, that validates the board's suppositions. This is so even though 21 States place no specific restrictions of any kind on solicitation by CPAs, and only three States besides Florida have enacted a categorical ban. Not even [plaintiff's] own conduct suggests that the Board's concerns are justified. The only suggestion that a ban on solicitation might help prevent fraud and overreaching or preserve CPA independence is the affidavit or Louis Dooner, which contains nothing more than a series of conclusory statements that add little if anything to the Board's original statement of its justifications.

*Edenfield,* 507 U.S. at 770–73, 113 S.Ct. at 1800–01.

The Board concedes that if Rule 046—2-.10(5)(b) was a total prohibition of specialty advertising, it would have failed to carry its

burden under *Edenfield.* However, the Board points out that the rule does not prohibit speech at all, but that it merely requires general dentists to disclose certain additional information if they wish to advertise the specialty branches of their practice. The Board argues that the U.S. Supreme Court has treated regulations requiring additional speech much more deferentially than absolute bans on speech; and that under its decisions, namely *Zauderer v. Office of the Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), the rule is constitutional as applied to Dr. Douglas.

In *Zauderer* the petitioner, an attorney, published an advertisement that offered to represent women injured as a result of using the Dalkon Shield intrauterine device on a contingent-fee basis; the advertisement also contained an accurate drawing of the device. The advertisement did not disclose whether the potential clients would be responsible for court costs, as opposed to legal fees, if their suits were unsuccessful.

The disciplinary counsel of the Ohio Supreme Court brought charges against the attorney, alleging that he had violated rules prohibiting attorneys from soliciting employment with advertisements concerning a specific legal problem; and a rule that prohibited attorneys from using illustrations in advertising. The Board also charged the attorney with violating a rule that required lawyers to disclose whether the contingent-fee rate is computed before or after the deduction of court costs. The board hearing the matter found the attorney guilty of violating all these rules.

On review, the U.S. Supreme Court concluded that the rules prohibiting advertisements for a specific legal problem and the rule prohibiting illustrations were violative of the First Amendment. Since the advertisements were truthful, the Court stated, the State was required to assert a substantial interest and to prove that the rules advanced the interests in a direct and material way. Although the Court found the State's proffered interest in preventing deception to be substantial, it disagreed with the argument, set forth by the State, that the inherent ambiguity of attorney advertising as com-

pared to other types of advertising mandated its broad prophylactic rules. The Court reasoned that the validity of attorney advertising was no more difficult to ascertain than other types. As to the rule prohibiting illustrations, the Court was much more explicit about the State's failure to prove that the use of illustrations created the risk of deception. The Court stated:

> The State's arguments amount to little more than unsupported assertions: nowhere does the State cite any evidence or authority of any kind for its contention that the potential abuses associated with the use of illustrations in attorneys' advertising cannot be combated by any means short of a blanket ban. Moreover, none of the State's arguments establish that there are particular evils associated with the use of illustrations in attorneys' advertisements.

*Zauderer,* 471 U.S. at 648–49, 105 S.Ct. at 2280.

The Court's analysis as to the constitutionality of the disclosure rule was, however, radically different. The Court explained that:

> Appellant contends that assessing the validity of the Ohio Supreme Court's decision to discipline him for his failure to include in the Dalkon Shield advertisement the information that clients might be liable for significant litigation costs even if their lawsuits were unsuccessful entails precisely the same inquiry as determining the validity of the restrictions on advertising content discussed above. In other words, he suggests that the State must establish either that the advertisement, absent the required disclosure, would be false or deceptive or that the disclosure requirement serves some substantial governmental interest other than preventing deception; moreover, he contends that the state must establish that the disclosure requirement directly advances the relevant governmental interest ... Not surprisingly, appellant claims that the State has failed to muster substantial support for any of the findings required to support the restriction.

Appellant, however, overlooks material differences between disclosure requirements and outright prohibitions on speech. In requiring attorneys who advertise their willingness to represent clients on a contingent-fee basis to state that the client may have to bear certain expenses even if he loses, Ohio has not attempted to prevent attorneys from conveying information to the public; it has only required them to provide somewhat more information than they might otherwise be inclined to present. We have, to be sure, held that in some instances compulsion to speak may be as violative of the First Amendment as prohibitions on speech ... [citing cases]. But the interests at stake here are not of the same order [as in those cases]. Ohio has not attempted to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.' The State has attempted only to prescribe what shall be orthodox in commercial advertising, and its prescription has taken the form of a requirement that appellant include in his advertising purely factual and uncontroversial information about the terms under which his services will be available. Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal. Thus, in virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, 'warnings or disclaimers might be appropriately required ... in order to dissipate the possibility of consumer confusion and deception.'

We do not suggest that disclosure requirements do not implicate the advertiser's First Amendment rights at all. We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech. But we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers.

*Zauderer*, 471 U.S. at 650–51, 105 S.Ct. at 2281–82 (emphasis in original) (citations omitted).

The *Zauderer* court proceeded to apply this standard to the disclosure rule, and it determined that the rule was not violative of the First Amendment. It reasoned that:

The assumption that substantial numbers of clients would be misled is hardly a speculative one: it is commonplace that members of the public are often unaware of the technical meanings of such terms as "fees" and "costs"—terms that, in ordinary usage, might well be virtually interchangeable. When the possibility of deception is as self-evident as it is in this case, we need not require the State to 'conduct a survey of the ... public before it [may] determine that the [advertisement] had a tendency to mislead.' The State's position that it is deceptive to employ advertising that refers to contingent-fee arrangements without mentioning the client's liability for costs is reasonable enough to support a requirement that information regarding the client's liability for costs be disclosed.

*Zauderer*, 471 U.S. at 652–53, 105 S.Ct. at 2282–83 (citations omitted).

*Zauderer* is on point with the case at hand; and under the less exacting standard enunciated therein, it would appear that Board Rule 0460-2-.10(5)(b) passes constitutional muster. Dr. Douglas, however, argues that this is not so for two reasons. First, he argues that whereas the potential for deception in *Zauderer* was "self-evident," thereby making the State's position reasonable, the potential for deception in this case is not self-evident. Dr. Douglas presumably does not contest the Board's finding that some consumers of dental services may erroneously assume that a general dentist advertising a specialty without the required disclaimer is, in fact, a certified specialist. Rather, he appears to argue—and the Court of Appeals specifically stated—that the possibility of deception is not self-evident because it is not

immediately apparent that even a consumer operating under such a false assumption would actually be harmed by it. The unstated premise underpinning this argument is that, pursuant to Board regulations, a general dentist performing a specialty branch possesses the necessary education and experience to perform the specialty; and thus it is irrational to simply presume that the patient will likely be harmed by the erroneous assumption.

The answer to this argument is that the Board—the body with legally recognized expertise in dental matters and charged with the duty of supervising the profession—believes it worthwhile to certify specialists in certain fields; and the Board deems it justifiable to formulate its advertising policies in light of the certification scheme. We will not second-guess the wisdom of this judgment, especially given the extremely minimal extent to which the disclosure requirement impinges upon the First Amendment rights of general dentists. If the Board had enacted a rule completely preventing general dentists from advertising a speciality branch, our conclusion would likely have been different. Then we would have been faced with a situation in which a general dentist, after having satisfied the Board's requirements to practice a specialty branch, was nevertheless arbitrarily prohibited from informing the public about his or her practice. This case, however, presents no such problem.

The other argument advanced by Dr. Douglas is much more substantial. He argues that in *Ibanez, supra,* the U.S. Supreme Court effectively repudiated the *Zauderer* disclosure analysis, and instead required that the State justify disclosure requirements in the same way that it must justify total prohibitions. Thus, Dr. Douglas argues, *Zauderer* is inapplicable; and because the Board presented nothing but the "policy statement" in justification of the rule, it failed to carry its burden of proof.

In *Ibanez* the Florida Board of Accountancy charged the petitioner with, among other things, violating Board rules against deceptive advertising by using the title Certified Financial Planner (CFP) in firm letterhead, business cards, and a yellow pages listing.

The Board pointed out that it did not recognize the CFP designation; it argued that the use of the designation implied state approval thereof and was thus inherently misleading.

On review, the U.S. Supreme Court struck Florida's blanket ban on the use of the CFP designation. It noted that the designation was well-established; that it was granted only after an applicant met certain requirements established by a national board of standards; and that the petitioner was in fact a CFP. Because the information was truthful, and because the Board failed to provide any evidence that the CFP designation actually misled the public, the Court struck the blanket ban.

Much more important for purposes of this case was, however, the Court's treatment of the alternative contention advanced by the Board—that it could constitutionally require the petitioner to include a disclaimer in her advertisements. The Court had the following to say in response to this argument:

The Board alternatively contends that Ibanez' use of the CFP designation is 'potentially misleading,' entitling the Board to 'enact measures short of a total ban to prevent deception or confusion.' If the 'protections afforded commercial speech are to retain their force,' we cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.' *Edenfield,* 507 U.S. at 770–71, 113 S.Ct. at 1800.

The Board points to [its rule] which prohibits use of any 'specialist' designation unless accompanied by a disclaimer, made 'in the immediate proximity of the statement that implied formal recognition as a specialist'; the disclaimer must 'state that the recognizing agency is not affiliated with or sanctioned by the state or federal government,' and it must set out the recognizing agency's 'requirements for recognition, including, but not limited to, education, experience, and testing.' Given the state of this record—the failure of the Board to point to any harm that is potentially real, not purely hypothetical—we are

satisfied that the Board's action is unjustified. We express no opinion whether, in other situations or on a different record, the Board's insistence on a disclaimer might serve as an appropriately tailored check against deception and confusion, rather than one imposing 'unduly burdensome disclosure requirements [that] offend the first amendment.' *Zauderer,* supra, 471 U.S. at 651, 105 S.Ct. at 2282. This much is plain, however: the detail required in the disclaimer currently described by the Board effectively rules out notation of the 'specialist' designation on a business card or letterhead, or in a yellow pages listing.

*Ibanez,* 512 U.S. at ——, 114 S.Ct. at 2090 (some citations omitted). Moreover, later in the opinion the *Ibanez* court made the following statements: "... we stress again the failure of the Board to back up its alleged concern that the designation CFP would mislead rather than inform," 512 U.S. at ——, 114 S.Ct. at 2091; and "[w]e have never sustained restrictions on constitutionally protected speech on a record so bare as the one on which the Board relies here." *Id.*

Thus, there is some support for Dr. Douglas's argument that *Ibanez* constitutes an implicit repudiation of the *Zauderer* disclosure analysis; and it is clear that such an interpretation would doom the Board rule at issue here. To so interpret *Ibanez,* however, would conflict with established principles of case construction and judicial review. First, it is well-settled that because of the importance of the doctrine of *stare decisis,* a subsequent case is not to be regarded as overruling a prior one *sub silentio* if an alternative, logical reading of the later case is possible. This is especially true in the constitutional context, where it is the reviewing court's duty to harmonize potentially conflicting case law if the constitutionality of a statute or regulation is at stake. *Monday v. Millsaps,* 197 Tenn. 295, 271 S.W.2d 857 (1954); *Barnes v. Walker,* 191 Tenn. 364, 234 S.W.2d 648 (1950).

With this in mind, we read *Ibanez* to mean that the disclaimer violated the First Amendment simply because it was "unduly burdensome" under the *Zauderer* analysis. Indeed,

because the incredible detail prescribed by the regulation precluded the inclusion of the CFP designation in the spatially limited forms of advertising at issue in the case— firm letterhead, business cards and the yellow pages—it is not at all surprising that the Court concluded that the disclaimer constituted a *de facto* prohibition.

Our conclusion that the *Ibanez* court did not intend to repudiate *Zauderer* is also supported by the fact that the Court was not convinced that even the inclusion of the extravagantly detailed disclaimer would have shielded the petitioner from the reprimand. In a footnote, the Court stated:

> Under the Board's regulations, moreover, it appears that even a disclaimer of the kind described would not have saved Ibanez from censure. [Another rule] flatly bans 'stating a form of recognition by any entity other than the Board that uses the term certified.' Separate and distinct from that absolute prohibition, the regulations further proscribe 'stating or implying that the licensee has received formal recognition as a specialist in any aspect of public accounting, unless the statement contains a copiously detailed disclaimer.

*Ibanez,* 512 U.S. at ——, n. 11, 114 S.Ct. at 2091, n. 11. Thus, it appears that the Court may have simply concluded that *Ibanez* was "not a disclaimer case," and therefore focussed its attention on the lack of proof in the record.

Having interpreted *Ibanez* as an extension rather than a repudiation of *Zauderer,* we conclude that the Board rule passes constitutional muster under that analysis. The disclaimer at issue here, in stark contrast to the one presented in *Ibanez,* is scarcely burdensome at all. General dentists are merely required to include a one-sentence explanation in their advertisements of specialty branches. This is not a sufficient burden to warrant the drastic action of striking a duly enacted administrative rule.

For the foregoing reasons, the judgment of the Court of Appeals is reversed and the

judgment of the Davidson County Chancery Court is affirmed.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.