# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 3, 2001 Session

## TED F. WALKER v. THE BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

### Appeal from the Chancery Court for Hamilton County
### No. 98-0504    Jeffrey F. Stewart, Chancellor

---

### No. E1999-002338-SC-R3-BP - Filed February 20, 2001

---

The Code of Professional Responsibility requires attorneys who advertise with regard to any area of law but who are not certified in that area to include the following disclaimer in their advertisements: "Not certified as a (area of practice) specialist by the Tennessee Commission on Continuing Legal Education and Specialization." DR 2-101(C)(3). The appellant was not certified as a civil trial specialist (which when this case arose covered the area of divorce law) yet he specifically mentioned divorce law in certain ads, and in another ad he did not adhere to the exact wording of the required disclaimer. The Board of Professional Responsibility brought a disciplinary action against the appellant and, finding him in violation of DR 2-101(C)(3), issued a private reprimand. The appellant sought review of the Board's action in Chancery Court, which upheld the sanction. He now seeks further review in this Court, arguing for the reversal of the sanction on the ground that DR 2-101(C)(3) violates the First Amendment to the United States Constitution. We hold that this disclosure rule is constitutional and that the private reprimand may stand. We therefore affirm the Chancery Court. We also affirm the Chancery Court's holding that the appellant may be held responsible for the costs of this disciplinary action.

### Tenn. S. Ct. R. 9 Direct Appeal; Judgment of the Chancery Court Affirmed; Case Remanded to the Board of Professional Responsibility for Assessment of Costs

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which, E. Riley Anderson, C.J., Adolpho A. Birch, Jr., Janice M. Holder, and WILLIAM M. BARKER, JJ. joined.

Charles P. Dupree, Chattanooga, Tennessee, for the appellant, Ted F. Walker.

Jesse D. Joseph and Stacy Eugenia Gibson, Nashville, Tennessee, for the appellee, The Board of Professional Responsibility of the Supreme Court of Tennessee.

**OPINION**

Ted F. Walker (Walker), the plaintiff/appellant, is an attorney who maintains a divorce law practice in Nashville, Memphis, and Chattanooga. His practice focuses on uncontested divorces in which both parties agree to a settlement. Walker is not certified as a specialist in civil trial practice (which included divorce law)[1] by the Tennessee Commission on Continuing Legal Education and Specialization. Certification, while not required to practice a particular area of law, is intended to enhance both the skills of attorneys licensed in Tennessee and "the ability of the citizens . . . to identify attorneys with special competence in particular areas of practice." S. Ct. R. 21 § 10.02(a); see generally S. Ct. R. 21 § 10 (describing the certification process).

Over the years Walker has advertised his services by placing short ads in local newspapers. The Board of Professional Responsibility of the Supreme Court of Tennessee (Board), the defendant/appellee, became aware of these ads, believed they violated provisions of the Code of Professional Responsibility, and filed two petitions for discipline against Walker. Walker claims that the Board's disciplinary action cannot be maintained because the provisions of the Code on which it is based violate the First Amendment to the United States Constitution. Before analyzing this claim we describe the factual and procedural history leading up to this appeal.

PROCEDURAL HISTORY
First Petition

In February 1995, Walker placed an advertisement for divorce services in the Chattanooga News Free Press TV Magazine. The ad was published over the week of February 12 through 18, 1995 and states in its entirety: "DIVORCE, BOTH PARTIES SIGN, $125 + COST, NO EXTRA CHARGES, Ted Walker, [address & telephone number]." On March 29, 1995, the Board's Disciplinary Counsel filed a complaint against Walker alleging that this advertisement listed divorce as a specific area of practice but did not include the disclaimer required by DR 2-101(C) of the Code of Professional Responsibility. This rule provides:

> A lawyer who publishes or broadcasts a communication with regard to any area of law in which the lawyer practices shall: . . . (3) [i]f the lawyer has not been certified as a specialist by the Tennessee Commission on Continuing Legal Education and Specialization in an advertised area in which certification is available, state with respect to each such area, "*Not certified as a (area of practice) specialist by the Tennessee Commission on Continuing Legal Education and Specialization.*"

DR 2-101(C)(3) (emphasis added). In his response to the complaint, Walker argued that his advertisement fully complied with the United States Supreme Court's decision in Bates v. State Bar of Arizona, 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977) and that "the law, as set out by the United States Supreme Court, is governing over a conflicting law by the Tennessee Supreme

---

[1] At the time this case arose the civil trial practice designation covered the area of divorce law. As of December 20, 1999, however, there is a separate family law designation which includes the specialty of divorce law.

Court." After an exchange of correspondence with the Disciplinary Counsel, Walker apparently agreed to change his advertisement to add the required disclaimer.

On March 29, 1996, the Board issued an Informal Admonition and stated that the file would be closed; however, the Board's letter stated that Walker could request a formal hearing on the matter within twenty days after receipt of the admonition. On April 3, 1996, Walker sent a letter to the Chief Disciplinary Counsel asking that the proposed discipline be vacated and that a formal proceeding be initiated pursuant to Rule 9 ("Disciplinary Enforcement") of the Supreme Court Rules. As a result, the Disciplinary Counsel filed a petition for discipline on October 31, 1996 alleging that Walker had violated DR 1-102, which prohibits the violation of any of the disciplinary rules, in this case DR 2-101(C).

Second Petition

The Board filed a "Supplemental Petition for Discipline" on July 21, 1997. The supplemental petition alleged that a complaint file had been opened pertaining to two advertisements placed in The Chattanooga Times on February 9, 1997: one in the Chattanooga TV Guide and one in the Business Directory Section of the classified ads. The TV guide ad stated: "DIVORCE, BOTH PARTIES SIGN, $90.00 + COURT COSTS $89.50, No 'Extra' Charges, TED WALKER, [phone number], Not certified as a specialist by the TN Commission on Certification and Specialization." The ad in the Business Directory Section was similar but did not contain the "not certified" statement. The Board's supplemental petition alleged that the ad in the Chattanooga TV Guide did not use "the precise language required by the Tennessee Supreme Court in quotation marks within Tenn. R. S. Ct. 8, DR 2-101(C) (2) (3), with no variations or abbreviations, an interpretation adopted by the Board in Tennessee Formal Ethics Opinion 95-F-137." The supplemental petition also alleged that the advertisement in the Business Directory Section "include[d] no mandatory disclosure of specialty certification whatsoever, as is required under DR 2-101(C)(3)." The petition further alleged that Walker did not comply with DR 2-101(F) (pertaining to filing copies of advertisements within three days of their publication) as to either of the ads.

Proceedings Before the Hearing Committee

The petitions were set for a hearing before a Hearing Committee of the Board. On February 2, 1998, the parties conducted a conference call to discuss a possible settlement. Based on an agreement reached during that conference call, the Hearing Committee entered an "agreed judgment" on March 24, 1998 in which Walker entered a "no contest plea" to both the Petition for Discipline and the Supplemental Petition for Discipline. The agreed judgment provided that Walker

> is privately reprimanded for his newspaper advertising as set forth in both Petitions for Discipline, inasmuch as respondent has violated DR 2-101(C)(3) & (F), which also results in a violation of DR 1-102(A)(1) of the Code of Professional Responsibility. Respondent failed to properly state in such ads his lack of certification as a civil trial specialist by the Tennessee Commission on Continuing Legal Education and Specialization, and he failed to deliver to the Board a copy of such advertising within 3 days after its initial publication.

-3-

The agreed judgment also provided that Walker would have the right to appeal the judgment "to attack the constitutionality of DR 2-101(C) et seq." The judgment entered by the Hearing Committee provided that if Walker did not appeal the judgment "in a timely fashion, he shall pay to the Board the costs of this proceeding amounting to $2,096.90, pursuant to Tenn. R. Sup. Ct. 9, § 24.3." This rule states:

> In the event that a judgment of disbarment, suspension, public censure, private reprimand, temporary suspension, disability inactive status, reinstatement, or denial of reinstatement results from formal proceedings, the Board shall assess against the respondent attorney the costs of the proceedings . . . the expenses of the hearing committee in the hearing of the cause, and the hourly charge of disciplinary counsel in investigating and prosecuting the matter. S. Ct. R. 9 § 24.3.

After entry of the agreed judgment, Walker filed a motion to set aside or obtain relief from the judgment. In his motion, Walker stated that he and the Assistant Disciplinary Counsel had negotiated a settlement of the case prior to the hearing but had not discussed any costs for which he would be responsible. Because he had not agreed to pay costs, Walker asserted that the judgment did not accurately reflect the parties' agreement. The Hearing Committee denied Walker's motion.

Walker filed a petition for certiorari review in the Chancery Court of Hamilton County. After a hearing on July 7, 1999 the Chancellor denied the petition, thereby affirming the Hearing Committee's judgment. Walker then filed his notice of appeal with the Court of Appeals. Pursuant to Rule 17 of the Tennessee Rules of Appellate Procedure and Rule 9 section 1.3 of the Supreme Court Rules, the Court of Appeals properly transferred Walker's appeal to this Court. We now consider both the constitutionality of the disclaimer rule Walker was sanctioned for having violated and whether he can be held responsible for the costs of this disciplinary action.

ANALYSIS
Standard of Review

This case requires us to evaluate the constitutionality of a provision of the Code of Professional Responsibility. As this is a question of law, our standard of review is de novo, without a presumption of correctness of the Chancery Court's judgment. See Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999).

Attorney Advertising and the First Amendment

Since Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) the United States Supreme Court has accorded First Amendment protection to commercial speech, and since Bates v. State Bar of Arizona, 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977) the Court has extended this protection to attorney advertising. The Court has given substance to the Bates holding through a series of attorney advertising commercial speech cases over the past quarter century. See generally Mason v. Florida Bar, 208 F.3d 952 (11th Cir. 2000) (a recent court of appeals case discussing this body of Supreme Court case law); Ficker v. Curran, 119 F.3d 1150 (4th Cir. 1997) (same). In the most recent attorney

advertising case the Court stated, "It is now well established that lawyer advertising is commercial speech, and as such, is accorded a measure of First Amendment protection." Florida Bar v. Went For It, Inc., 515 U.S. 618, 623, 115 S. Ct. 2371, 2375, 132 L. Ed. 2d 541 (1995). In the case before us we must determine how much protection, and how to apply that level of protection when evaluating the constitutionality of DR 2-101(C)(3).

We have never before addressed lawyer advertising, but we have squarely addressed a similar regulation of another profession. In Douglas v. State, 921 S.W.2d 180 (1996) we upheld the constitutionality of an administrative rule requiring dentists who are not certified specialists but who advertise that they offer specialty services like orthodontics to disclose that their services "are being provided by a general dentist." Douglas is, of course, similar to the case before us, all the more so because the case law does not make distinctions among the professions. For example, in Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, 512 U.S. 136, 114 S. Ct. 2084, 129 L. Ed. 2d 118 (1994) the United States Supreme Court relied heavily on attorney advertising cases although the regulation before it involved advertising by Certified Public Accountants (CPAs) and Certified Financial Planners. See also Edenfield v. Fane, 507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) (involving the regulation of CPAs). Our opinion in Douglas also relied heavily on attorney advertising cases. Since the commercial speech standards recently discussed in Douglas apply here, and since the United States Supreme Court has not decided a "regulation of professions" commercial speech case after Douglas, we find that case to be highly relevant authority.

The validity of commercial speech regulations is subject to what has been termed intermediate – as opposed to strict – scrutiny, according to a test announced in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). See Douglas, 921 S.W.2d at 184 (discussing Central Hudson). The test is as follows:

> For commercial speech to come within that provision [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we must ask whether the asserted government interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the government interest asserted, and whether it is not more extensive than is necessary to serve that interest.

Central Hudson, 447 U.S. at 566, 100 S. Ct. at 2351. This test is used to analyze the validity of regulations that prohibit or limit commercial speech. See, e.g., Greater New Orleans Broad. Ass'n, Inc. v. United States, 527 U.S. 173, 119 S. Ct. 1923, 144 L. Ed. 2d 161 (1999) (striking down a federal regulation prohibiting broadcast advertisements of private casino gambling where such gambling was legal); Florida Bar, 515 U.S. 618, 115 S. Ct. 2371 (upholding a Florida regulation prohibiting targeted direct-mail solicitation of accident victims and their relatives for thirty days following an accident); 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 116 S. Ct. 1495, 134 L. Ed. 2d 711 (1996) (striking down a Rhode Island prohibition on advertisements that provided accurate information about the retail prices of alcoholic beverages); Ibanez, 512 U.S. 136, 114 S. Ct. 2084 (reversing the Florida Board of Accountancy's reprimand of an attorney who truthfully advertised that she was a CPA and a Certified Financial Planner); Peel v. Attorney Registration and

<u>Disciplinary Comm'n</u>, 496 U.S. 91, 110 S. Ct. 2281, 110 L. Ed. 2d 83 (1990) (reversing the Illinois Supreme Court's censure of an attorney whose professional letterhead truthfully advertised that he was certified as a civil trial specialist by a national organization).

The regulation before us requires that whenever a lawyer advertises his services in a particular area of law for which certification is available in Tennessee, he must disclose in the ad whether he is certified. DR 2-101(C). Since Walker was not certified as a civil trial specialist (which then covered the area of divorce law) yet he specifically mentioned divorce law in his ads, the disciplinary rule mandates that his ads include the following language: "Not certified as a civil trial specialist by the Tennessee Commission on Continuing Legal Education and Specialization." DR 2-101(C)(3). This regulation does not prohibit or limit speech; instead it requires more speech by way of an explanatory disclaimer.

The fact that the regulation requires disclosure rather than prohibition tends to make it less objectionable under the First Amendment. Recognizing that the "bar retains the power to correct omissions that have the effect of presenting an inaccurate picture," the Court in <u>Bates</u> specifically noted that "the preferred remedy is more disclosure, rather than less." <u>Bates</u>, 433 U.S. at 375, 97 S. Ct. at 2704-05. <u>See also</u> <u>Peel</u>, 496 U.S. at 110, 110 S. Ct. at 2292 ("To the extent that potentially misleading statements of private certification or specialization could confuse consumers, a State might consider screening certifying organizations or *requiring a disclaimer about the certifying organization or the standards of a specialty.*") (emphasis added). In <u>Douglas</u> we addressed the distinction between prohibition and disclosure. We discussed <u>Zauderer v. Office of the Disciplinary Counsel</u>, 471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed 2d 652 (1985), in which the United States Supreme Court struck down an Ohio regulation prohibiting the use of illustrations in attorney ads, but upheld that state's regulation requiring an attorney who advertises her availability on a contingent-fee basis to disclose that clients are responsible for court costs. <u>See</u> <u>Douglas</u>, 921 S.W.2d at 185-86. We noted that the First Amendment analysis in <u>Zauderer</u> was more forgiving of disclosure-type regulations and we quoted from that decision at length, parts of which we again recite:

> Appellant, however, overlooks material differences between disclosure requirements and outright prohibitions on speech. . . . Ohio has not attempted to prevent attorneys from conveying information to the public; it has only required them to provide somewhat more information than they might otherwise be inclined to present. . . . Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal.

*　　*　　*

> We do not suggest that disclosure requirements do not implicate the advertiser's First Amendment rights at all. We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected

-6-

commercial speech. *But we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers.* Douglas, 921 S.W.2d at 186 (quoting Zauderer, 471 U.S. at 650-51, 105 S. Ct. at 2281-82 (internal citations omitted) (emphasis in last sentence added)).


In Douglas a principal question was whether the United States Supreme Court repudiated this disclosure analysis in Ibanez. The petitioner in Douglas pointed to language in Ibanez to support that contention, but we held that Ibanez should be interpreted to harmonize rather than conflict with Zauderer. We therefore held that the disclosure requirement in Ibanez was "unduly burdensome" under the Zauderer standard – as opposed to some newly announced constitutional standard. More important, we discerned that Ibanez's central holding was that the state had failed to offer sufficient proof justifying its regulation. See Douglas, 921 S.W.2d at 188 ("[I]t appears that the Court may have simply concluded that Ibanez was 'not a disclaimer case,' and therefore focussed [sic] its attention on the lack of proof in the record."). Thus, under current law – as announced in Zauderer – as long as the disclosure requirement is reasonably related to the state's interest in preventing deception of consumers, and not unduly burdensome, it should be upheld. Recent cases have also applied the less rigorous Zauderer standard when confronted with government regulations requiring disclosure of information. See, e.g., Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 233 F.3d 981, 994 (7th Cir. 2000) ("The government can impose affirmative disclosures in commercial advertising if these are reasonably related to preventing the public from being deceived or misled."); Commodity Futures Trading Comm'n v. Vartuli, 228 F.3d 94, 108 (2d Cir. 2000); Consolidated Cigar Corp. v. Reilly, 218 F.3d 30, 54 (1st Cir. 2000). Of course, the state must always meet its burden of justifying the need for regulation in the first place. See Ibanez, 512 U.S. at 146-47, 114 S. Ct. at 2090-91; Mason, 208 F.3d at 958. The holding of Douglas simply recognizes that the Board's burden is lower than it would be had it prohibited Walker from advertising truthful information.

### The Constitutionality of DR 2-101(C)(3)

The Board argues that Tennessee's interest in requiring non-certified attorneys who advertise specialty services to include a disclaimer in their ads is substantial: protecting consumers of legal services by allowing them to make informed judgments about which attorney to hire to handle their legal needs. We agree that this interest is substantial. As one court has put it, "the state, as part of its duty to regulate attorneys, has an interest in ensuring and encouraging the flow of helpful, relevant information about attorneys." Mason, 208 F.3d at 956; see also Peel, 496 U.S. at 110, 110 S. Ct. at 2293 ("Information about certification and specialties facilitates the consumer's access to legal services and thus better serves the administration of justice."). See generally Florida Bar, 515 U.S. at 625, 115 S. Ct. at 2376 ("States have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.") (quoting Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016, 44 L. Ed. 2d 572 (1975)).

Since the state's interest is substantial, the question is whether DR 2-101(C)(3) is reasonably related to promoting that interest. See Douglas, 921 S.W.2d at 186 (quoting Zauderer, 471 U.S. at 650-51, 105 S. Ct. at 2281-82). The record before this Court when the certification disclaimer rule was considered in 1993 reveals that the Commission on Continuing Legal Education ("Commission"), which petitioned this Court to adopt the rule, had the following concern: lawyers who were advertising specialties were actually obtaining far fewer Continuing Legal Education hours of training than leading practitioners in that specialty area who were not advertising. See Commission on Continuing Legal Education, Attorney Specialization in Tennessee 5 (1992) (reprinted in In re Petition to Amend Supreme Court Rules 8 and 21, No. 01S01-9304-OT-00066 (filed Feb. 26, 1993) (Ex. C)).[2] This was problematic because an American Bar Association survey indicated that the public expected a lawyer who advertised in a particular area of law to have greater education in that area than other lawyers. See id. (citing ABA Specialization Desk Book, A Survey on How the Public Perceives a Specialist (1990)). The Commission thought the public would be better served if presented with a more accurate picture of an advertising lawyer's level of education.

The disclaimer rule the Commission advocated and this Court ultimately adopted promotes the Commission's legitimate goal by clearly and succinctly providing the public with information about the certification status of attorneys who advertise their services. This information will help a consumer identify which lawyers may have more experience and education in a particular area of law[3] – knowledge which will help that consumer hire a lawyer to represent his interests. It is not contended, of course, that the disclaimer rule by itself provides all the useful information the public might wish to obtain; indeed, many attorneys advertise, and consumers will still have to make choices among attorneys with a similar certification status. But the information required by DR 2-101(C)(3) is one piece of information that will assist consumers in making those choices. The required disclaimer is therefore reasonably related to promoting the substantial interest of helping consumers to make informed judgments about which attorneys they should entrust with their legal needs.

---

[2] The Commission conducted a survey comparing the number of continuing legal education hours earned per year by attorneys who advertised (Advertisers) with display ads in the yellow pages to hours earned by attorneys recognized as leading practitioners (LPs) in four areas of law: bankruptcy, criminal defense, domestic relations, and personal injury. See Commission, supra, at 13-14. The results were as follows: (1) in bankruptcy the LPs averaged 14.6 hours and the Advertisers averaged 4.1 hours; (2) in criminal defense the LPs averages 19.6 hours and the Advertisers averaged 2.2 hours; (3) in domestic relations the LPs averaged 8.7 hours and the Advertisers averaged 1.9 hours; and (4) in personal injury the LPs averaged 16.2 hours and the Advertisers averaged 6 hours. Id.

[3] The Supreme Court Rules require that "[a]t a minimum, any certification standards established by the Commission must provide a reasonable basis for the determination that the lawyer possesses special competence in a particular field of law . . ." S. Ct. R. 21 § 10.03. Section 10.03 sets forth in general terms the requirements that certification programs must meet before they are recognized by the Commission. These requirements ensure that attorneys who are certified have demonstrated sufficient experience, knowledge, and practice management skills, that they have good recommendations from other attorneys, judges, and clients, and that they be re-certified at least every six years. Id.

Next, we must determine whether DR 2-101(C)(3) is unduly burdensome. The United States Supreme Court in Ibanez confronted a Florida Board of Accountancy rule that required a Certified Financial Planner who included a specialist designation on an advertisement to disclose, among other things, the requirements for recognition of the agency that certified her as a specialist. Ibanez, 512 U.S. at 146, 114 S. Ct. at 2090. Although the Court concluded that the disclosure requirement was unconstitutional because the Florida Board had failed to justify the need for such regulation, it also noted that the disclosure requirement was too burdensome: "The detail required in the disclaimer currently described by the Board effectively rules out notation of the 'specialist' designation on a business card or letterhead, or in a yellow pages listing." Id., 512 U.S. at 146-47, 114 S. Ct. 2090-91. In contrast to the detailed disclaimer in Ibanez, the disclaimer required by DR 2-101(C)(3) is as short and free of burdensome detail as possible. It simply requires the following language: "Not certified as a (area of practice) specialist by the Tennessee Commission on Continuing Legal Education and Specialization." This statement does not require an attorney who advertises his skills to disclose anything more than the basic fact of his non-certification; no extraneous information or lengthy detail is required. We hold that the disclaimer here satisfies the constitutional standard.

Finally, Walker argues that even if the disclosure rule is constitutional, the State cannot require him to use the precise language listed in DR 2-101(C)(3). He argues that any statement that conveys the same meaning as the specific language in the disciplinary rule is sufficient. He claims that his disclaimer, which states that he was "not certified as a specialist by the Tennessee Commission on Certification and Specialization," meets this standard. Consequently, he argues that no sanction against him is permissible on this ground. We will respond to this argument directly, but we first note that Walker received one of the lighter sanctions, a private reprimand, and that this sanction was fully justified by Walker's failure to include *any* disclaimer on some of his ads.

Walker argues that the United States Supreme Court's decision in In re R.M.J., 455 U.S. 191, 102 S. Ct. 929, 71 L. Ed. 2d 64 (1982) supports his position. We disagree. R.M.J. held that an attorney could not be disciplined for deviating from the precise listing of areas of practice which a Missouri disciplinary rule required him to follow when advertising his specialty skills. Id., 455 U.S. at 205, 102 S. Ct. at 938. Specifically, the attorney advertised his skills in the area of "real estate" instead of the required "property," and he listed his skills in "contracts" and "securities" though no such designations has been approved by the Missouri state board. Id. The Court's rationale was that "the listing published by the appellant has not been shown to be misleading, and...the [Missouri Board] suggests no substantial interest promoted by the restriction." Id.

Unlike R.M.J., where the attorney's advertisements could not have been misleading, we think that deviations from the specific wording of DR 2-101(C)(3) could lead to public confusion. The required disclaimer statement was worded in the most simple, direct fashion so that the public would have no difficulty understanding its meaning or comparing different attorney advertisements. This goal might easily be thwarted if attorneys were allowed to write their own disclaimer statements. Rather than focus on the intended message – that an attorney is not certified – a consumer would be forced to parse the meaning of different disclaimer statements, attempting to understand without any guidance why one attorney's disclaimer was different than another's.

The Board's interest in requiring uniform language is significant for another reason. Just as the absence of uniformity would require a consumer to compare many different disclaimer statements, so would the Board, and subsequently the courts, be forced to examine advertisement after advertisement in an effort to determine which attorneys substantially complied with DR 2-101(C)(3) and which attorneys fell somewhat short. This costly and inefficient task seems entirely unnecessary in light of the ease of complying with a uniform rule – especially one which is as short and free of burdensome detail as possible.

In upholding the requirement that lawyers who advertise adhere to the exact language in DR 2-101(C)(3) we note what the United States Supreme Court stated in Zauderer. Responding to the appellant's argument that the Ohio Supreme Court's disclosure rule in that case was "unduly burdensome," the Court stated that "[t]he vagueness of the Ohio Supreme Court's opinion regarding precisely what an attorney must disclose in an advertisement mentioning a contingent fee is . . . unfortunate." Zauderer, 471 U.S. at 653 n.15, 105 S. Ct. at 2283 (suggesting that Ohio's failure to articulate the requirements of its disclosure rule would prohibit disbarment of an attorney who violated the rule on due process and First Amendment grounds). In contrast, DR 2-101(C)(3) is perfectly clear, and that clarity buttresses rather than undermines its constitutionality.

### The Imposition of Costs

Having held that DR 1-201(C)(3) is constitutional, it is clear that the Board's sanction against Walker is justified. Therefore, according to Tennessee Supreme Court Rule 9, Walker is responsible for the costs of the proceeding. See S. Ct. R. 9 § 24.3 ("[T]he Board shall assess against the respondent attorney the costs of the proceedings . . . the expenses of the hearing committee in the hearing of the cause, and the hourly charge of disciplinary counsel in investigating and prosecuting the matter."). Walker maintains, however, that the circumstances of the proceedings against him warrant that he be absolved from having to pay these costs. He argues that he and the Assistant Disciplinary Counsel negotiated a settlement of the case prior to the hearing without discussing the issue of costs. Because he had not explicitly agreed to pay costs, Walker asserts that the agreed judgment does not accurately reflect the parties' agreement.

The Board responds that the Assistant Disciplinary Counsel forwarded Walker's attorney a copy of the proposed order which included the cost provisions discussed above on two separate occasions, and that Walker's attorney failed to respond. We need not resolve this dispute of fact, however, because the application of the rule does not depend upon whether the attorney subject to discipline received personal notice of its contents. Rather, the rule states that "the Board *shall* assess against the respondent attorney the costs of the proceedings." S. Ct. R. 9 § 24.3 (emphasis added). This rule, which requires the imposition of costs in all disciplinary cases, is published as part of the "Disciplinary Enforcement" section of the Supreme Court Rules. All attorneys subject to discipline have the opportunity to read this section carefully. We therefore affirm the Hearing Committee and the Chancery Court on this issue.

Prior to this appeal the Board assessed costs against Walker in the amount of $2,096.90. We remand this case back to the Board to determine the final costs for which Walker is responsible, including the proceedings before this Court.

CONCLUSION

For the reasons discussed above, we affirm the Chancery Court's ruling that the disclaimer requirement of DR 2-101(C)(3) is constitutional and that Walker is required to pay for the costs of this disciplinary action under Supreme Court Rule 9 section 24.3. We remand to the Board for a determination of the total costs for which Walker is responsible.


      FRANK F. DROWOTA, III, JUSTICE