Steven G. MASON, Plaintiff-Appellant,

v.

FLORIDA BAR, Defendant-Appellee.

No. 99-2138.

United States Court of Appeals,

Eleventh Circuit.

April 6, 2000.

Appeal from the United States District Court for the Middle District of Florida.(No. 97-01493-CV-ORL-18A), G. Kendall Sharp, Judge.

Before DUBINA and BLACK, Circuit Judges, and HILL, Senior Circuit Judge.

DUBINA, Circuit Judge:

This case involves facial and as applied challenges to Rule 4-7.2(j) of the Rules Regulating the Florida Bar ("Rule 4-7.2(j)"), which prohibits statements made by lawyers in advertisements or written communications that are "self laudatory" or that describe or characterize the quality of legal services. In particular, Appellant Steven G. Mason ("Mason") challenges the application of Rule 4-7.2(j) as a violation of his First Amendment rights and charges that Rule 4-7.2(j) is void-for-vagueness under the First Amendment as it applies to the states via the Due Process Clause of the Fourteenth Amendment.

I.

Mason, a criminal defense attorney practicing in Orlando, Florida, submitted a proof of his yellow pages advertisement to the Bar for an ethics advisory opinion.[1] In pertinent part, the advertisement states that Mason is " 'AV' Rated, the Highest Rating Martindale-Hubbell National Law Directory." The Bar issued an

---

[1]The Bar does not require attorneys to submit their advertisements to the Committee on Advertising for the Florida Bar for review prior to publication. The Rules Regulating the Florida Bar provide only that an attorney must submit an advertisement to the Committee concurrently with publication. *See* Rules Regulating The Florida Bar, Rule 4-7.5. An attorney may voluntarily seek an advisory opinion prior to publication of a particular advertisement by submitting the advertisement to the Committee, which will then issue an opinion to the attorney.

opinion that the advertisement violated Rule 4-7.2(j)[2] which provides: "Self-Laudatory Statements. A lawyer shall not make statements that are merely self-laudatory or statements describing or characterizing the quality of the lawyer's services in advertisements and written communication...." The Bar notified Mason that his advertisement must include a "full explanation as to the meaning of the [Martindale-Hubbell] AV rating and how the publication chooses the participating attorneys." The Bar further indicated that the explanation must state "that the ratings and participation are based 'exclusively on ... opinions expressed by ... confidential sources' and that these publications do not undertake to rate all Florida attorneys." (internal quotations and ellipses in original).

After exhausting his administrative appeals, Mason filed suit in district court alleging that the Bar's position violated the First Amendment and Rule 4-7.2(j) was void for vagueness under the Due Process Clause of the Fifth and Fourteenth Amendments. Mason sought a declaratory judgment from the district court declaring Rule 4-7.2(j) unconstitutional, as well as a permanent injunction enjoining the Bar from enforcing the Rule.

From the outset, the Bar has acknowledged that Mason is "AV" rated by Martindale-Hubbell, but insists that the full statement " 'AV' Rated, the Highest Rating Martindale-Hubbell National Law Directory" is misleading or potentially misleading. The district court conducted a mini-trial wherein the Bar presented only one witness in support of its position. Elizabeth Tarbert ("Ms.Tarbert"), the Bar's director of ethics and advertising, testified to the Bar's interests in promulgating the rule, and its belief that Mason's reference to Martindale Hubbell would mislead the unsophisticated public. The district court found in favor of the Bar and upheld Rule 4-7.2(j) against both of Mason's challenges.

---

[2] While pending appeal, the Supreme Court of Florida revised its advertising rules in *Amendments to Rules Regulating Florida Bar—Advertising Rules,* --- So.2d ----, 24 Fla. L. Weekly at S598-99 (Fla. Dec. 17, 1999). Rule 4-7.2(b)(3) replaces Rule 4-7.2(j) and provides in pertinent part, "Descriptive Statements. A lawyer shall not make statements describing or characterizing the quality of the lawyer's services in advertisements or written communications...." A comparison of the two provisions reveals that the only change, aside from the number of the statutory section, is that the word "self-laudatory" statements is omitted in the new statute.

II.

This court reviews *de novo* the question of whether state restrictions on commercial speech are constitutional. *See Falanga v. State Bar of Georgia,* 150 F.3d 1333, 1335-36 (11th Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 1496, 143 L.Ed.2d 651 (1999). The determination of whether a statute is unconstitutionally vague is also subject to *de novo* review in this court. *See Wilson v. State Bar of Georgia,* 132 F.3d 1422, 1427 (11th Cir.1998).

A.

On appeal, Mason contends that the Bar has no substantial state interest in regulating his advertisement because his advertisement is neither inherently nor potentially misleading. Mason further argues that even if the state does have a substantial interest, the Bar failed to produce sufficient evidence to justify its restrictions on his speech.

Commercial speech, expression inextricably related to the economic interests of the speaker and audience, is undeniably entitled to substantial protection under the First and Fourteenth Amendments of the United States Constitution. *See Ibanez v. Florida Dep't of Bus. & Prof'l Regulation,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994); *Edenfield v. Fane,* 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); *Peel v. Attorney Registration & Disciplinary Comm'n.,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990); *Board of Trustees v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); *Shapero v. Kentucky Bar Ass'n.,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988); *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Because of the value inherent in truthful, relevant information, a state may ban only false, deceptive, or misleading commercial speech. *See Ibanez,* 512 U.S. at 142, 114 S.Ct. 2084. However, a state may restrict commercial speech that is not false, deceptive, or misleading upon a showing that the restriction "directly and materially advances

a substantial state interest in a manner no more extensive than necessary to serve that interest." *Id.* at 142-43, 114 S.Ct. 2084.

Lawyer advertising is a constitutionally protected form of commercial speech, but like any other form of commercial speech, a state may regulate it to protect the public. *See Bates v. State Bar of Arizona,* 433 U.S. 350, 383-84, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). This court reviews the constitutionality of a state's restrictions on lawyer advertising pursuant to the four-part test originally set forth by the Supreme Court in *Central Hudson. See* 447 U.S. at 563-66, 100 S.Ct. 2343. Having determined from the outset that Mason's speech as truthful information is protectable commercial speech, satisfying *Central Hudson* 's first prong, we need only apply the latter three prongs of the *Central Hudson* test to determine whether the state's regulation of this speech is constitutional. The *Central Hudson* test inquires as to (1) whether the state's interests in limiting the speech is substantial; (2) whether the challenged regulation advances these interests in a direct and material way; and (3) whether the extent of the restriction on protected speech is in reasonable proportion to the interests served. *See id; Edenfield,* 507 U.S. at 767, 113 S.Ct. 1792. In applying *Central Hudson,* it is important to recall that "[t]he four parts of the *Central Hudson* test are not entirely discrete. All are important and, to a certain extent, interrelated: Each raises a relevant question that may not be dispositive to the First Amendment inquiry, but the answer to which may inform a judgment concerning the other three." *Greater New Orleans Broad. Ass'n, Inc. v. United States,* 527 U.S. 173, 119 S.Ct. 1923, 1930, 144 L.Ed.2d 161 (1999).

1.

Turning first to the government's interests in regulating Mason's commercial speech, the Bar advances three interests as "substantial government interests." The Bar first asserts an interest in ensuring that attorney advertisements are not misleading. Indeed, the Supreme Court confirmed long ago that the state has both a general interest in protecting consumers, as well as a special responsibility to regulate lawyers. *See Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 460, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). Thus, the

4

Bar's first asserted interest is substantial, meaning that the Bar may regulate Mr. Mason's commercial speech if it can show that the regulation directly addresses an actual harm.

The Bar also asserts an interest in ensuring that the public has access to relevant information to assist in the comparison and selection of attorneys. Again, there is little question that the state, as part of its duty to regulate attorneys, has an interest in ensuring and encouraging the flow of helpful relevant information about attorneys. *See Peel,* 496 U.S. at 110, 110 S.Ct. 2281 ("Information about certification and specialties facilitates the consumer's access to legal services and thus better serves the administration of justice."). Accordingly, the Bar's second asserted interest is also substantial.

Finally, the Bar contends that it has an interest in encouraging attorney rating services to use objective criteria. The Florida Bar offers no reason for its preference for objective criteria over subjective criteria, and the existing case law contributes little additional guidance on the matter. Because we fail to see the value in the distinction between objective and subjective criteria in the specific context before us, we must reject the Bar's third asserted "substantial" interest.

2.

Although the Bar has asserted two substantial interests in the abstract, its restrictions on Mason's speech do not necessarily serve those interests. The penultimate prong of the *Central Hudson* test requires a state's restrictions on speech to target an identifiable harm and mandates that the state's restrictions on speech mitigate against such harm in a direct and effective manner. *See Ibanez,* 512 U.S. at 146, 114 S.Ct. 2084; *Edenfield,* 507 U.S. at 773, 113 S.Ct. 1792. A state cannot satisfy its burden to demonstrate that the harms it recites are real and that its restrictions will alleviate the identified harm by rote invocation of the words "potentially misleading." *See Ibanez,* 512 U.S. at 146, 114 S.Ct. 2084 (quoting *Edenfield,* 507 U.S. at 771, 113 S.Ct. 1792).

The Bar does not view the statement that an attorney is " 'AV' Rated" as "potentially misleading." In fact, the Bar permits reference to one's "AV" rating without a disclaimer and explicitly acknowledges that

5

Martindale-Hubbell is a highly respected and valuable source of attorney information. Instead, the Bar balks at Mason's addition of the words "the Highest Rating." The Bar contends that the entire phrase " 'AV' Rated, the Highest Rating" will mislead the public to a degree not present with only the words " 'AV' rated." The Bar takes this position based on the belief that the general public's unfamiliarity with Martindale-Hubbell and the criteria used by Martindale-Hubbell to rate an attorney will lead the public to misconstrue and overvalue the phrase " 'AV' Rated, the Highest Rating."

In support of its position, the Bar offered the affidavit and testimony of the Bar's director of advertising and ethics, Ms. Tarbert, and portions of the 1998 Martindale-Hubbell Law Directory. Ms. Tarbert did not testify to any anecdotal accounts of actual harm to members of the general public misled by characterizations of Martindale-Hubbell's rating system, nor did the district court make a factual finding that any person had been misled or deceived by Mason's ad or a similar ad. Ms. Tarbert merely offered the Bar's "simple common sense" to support its view that application of Rule 4-7.2(j) targeted an identifiable harm and furthered substantial state interests in a direct and material matter.

In addition to Ms. Tarbert's common sense concerns, the Bar offered the Introduction to the Martindale-Hubbell Law Directory to support its conclusion that the directory was intended primarily for use within the legal community. The Introduction to the directory provides in part, that Martindale-Hubbell is "the legal community's most widely consulted and most respected directory of lawyers and law firms" and that the directory's objective is to "meet the legal community's ever-evolving information needs." Based on the Bar's evidence, the district court reached the conclusion that public's unfamiliarity with the Martindale-Hubbell Law Directory makes Mason's reference to the directory dangerously misleading.

The district court's conclusion is something of a non sequitur. Unfamiliarity is not synonymous with misinformation. *See Ibanez,* 512 U.S. at 147, 114 S.Ct. 2084. As the Supreme Court explained in *Peel,* "there is no evidence that the consumers ... are misled if they do not inform themselves of the precise standards under which claims of certification are allowed." 496 U.S. at 102-03, 110 S.Ct. 2281 (referring to

6

certification given by the National Board of Trial Advocacy, a non-state agency). Similarly, consumers need not be familiar with, nor fully understand, Martindale-Hubbell's ratings system in order to find it useful and not misleading. A rating, like a claim of certification, "is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success, but is simply a fact, albeit one with multiple predicates, from which a consumer may or may not draw an inference of the likely quality of an attorney's work ..." *Id.* at 101, 110 S.Ct. 2281. Accordingly, even if the district court properly inferred from the Introduction to Martindale-Hubbell that the general public is unfamiliar with the ratings system, this fact alone does not justify imposition of a disclaimer requirement on Mason's truthful advertisement.[3]

Moreover, the Bar presented no studies, nor empirical evidence of any sort to suggest that Mason's statement would mislead the unsophisticated public. While empirical data supporting the existence of an identifiable harm is not a sine qua non for a finding of constitutionality, the Supreme Court has not accepted "common sense" alone to prove the existence of a concrete, non-speculative harm. *See e.g., Ibanez,* 512 U.S. at 147, 114 S.Ct. 2084 (striking down a disclaimer requirement because the state failed "to back up its alleged concern that the [speech] would mislead rather than inform"); *Edenfield,* 507 U.S. at 770-71, 113 S.Ct. 1792 (rejecting the state's asserted harm because the state had presented no studies, nor anecdotal evidence to support its position); *Peel,* 496 U.S. at 108, 110 S.Ct. 2281 (rejecting a claim that certain speech was potentially misleading for lack of empirical evidence); *Zauderer,* 471 U.S. at 648-49, 105 S.Ct. 2265 (striking down restrictions on attorney advertising where "[t]he State's arguments amount to little more than unsupported assertions"). To the contrary, the law in this field has emphatically dictated that "rote invocation of the words 'potentially misleading,' " *Ibanez,* 512 U.S. at 146, 114 S.Ct. 2084, does not relieve the state's

---

[3]As in *Ibanez,* "[b]eyond question, this case does not fall within the caveat noted in *Peel* covering certifications issued by organizations that 'had made no inquiry into petitioner's fitness, or had 'issued certificates indiscriminately for a price'; statements made in such certifications, 'even if true, could be misleading.' " 512 U.S. at 148, 114 S.Ct. 2084. The parties in this case agree that Martindale-Hubbell is a highly reputable publication.

burden to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* (quoting *Edenfield,* 507 U.S. at 771, 113 S.Ct. 1792).

"The party seeking to uphold a restriction on commercial speech carries the burden of justifying it," *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983), and "[t]his burden is not satisfied by mere speculation or conjecture," *Edenfield,* 507 U.S. at 770-71, 113 S.Ct. 1792. The Bar has the burden in this case of producing concrete evidence that Mason's use of the words " 'AV' Rated, the Highest Rating" threatened to mislead the public. The Bar's inferences from the Introduction to Martindale-Hubbell are mere speculation, and Ms. Tarbert's testimony reveals that the Bar's concerns consist of unsupported conjecture. This court is unwilling to sustain restrictions on constitutionally protected speech based on a record so bare as the one relied upon by the Bar here. *See Ibanez,* 512 U.S. at 148, 114 S.Ct. 2084.

The Bar argues that its restriction on Mason's speech should be upheld because it has not insisted upon an outright ban on speech, but merely requires the use of a disclaimer. But given the glaring omissions in the record of identifiable harm, we see little merit in this argument. When faced with a record similarly devoid of proof of actual harm, the Supreme Court rejected this argument, stating:

> Given the state of this record—the failure of the Board to point to any harm that is potentially real, not purely hypothetical—we are satisfied that the Board's action is unjustified. We express no opinion whether, in other situations or on a different record, the Board's insistence on a disclaimer might serve as an appropriately tailored check against deception or confusion, rather than one imposing "unduly burdensome disclosure requirements [that] offend the First Amendment."

*Ibanez,* 512 U.S. at 146, 114 S.Ct. 2084 (quoting *Zauderer,* 471 U.S. at 651, 105 S.Ct. 2265). Even partial restrictions on commercial speech must be supported by a showing of some identifiable harm. Accordingly, we hold that the Bar is not relieved of its burden to identify a genuine threat of danger simply because it requires a disclaimer, rather than a complete ban on Mason's speech. Since we conclude that the Bar has failed to satisfy the second prong of *Central Hudson,* we need not address the "fit" between the regulation and the state's interests—*Central Hudson* 's final prong.

B.

Mason also argues that the term "self-laudatory" contained in Rule 4-7.2(j) is inherently subjective, and because the Bar does not have written guidelines or restrictions implementing 4-7.2(j), it is unconstitutionally vague. Mason points specifically to the advertisements of his peers, arguing that Rule 4-7.2(j) is infirm because it is subject to arbitrary decision making. Absent specific guidelines, argues Mason, the Bar retains unbridled discretion over its interpretation and application of the Rule.

Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *See Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). "The root of the vagueness doctrine is a rough idea of fairness." *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (quoting *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). The void-for-vagueness doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws. *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09, 92 S.Ct. 2294.

Although Mason is correct that Rule 4-7.2(j) is capable of multiple meanings and potentially very broad application, the Rule's language is plain and would adequately put Bar members on notice that merely self-referential and laudatory statements or statements describing the quality of their legal services are

9

prohibited.[4]  Consequently, we reject Mason's facial challenge to Rule 4-7.2(j) and affirm that part of the district court's judgment dealing with the void-for-vagueness challenge.

III.

In conclusion, we hold that the district court erred in finding Rule 4-7.2(j) of the Rules Regulating the Florida Bar to be a constitutional restriction on Mason's commercial speech.  Rule 4-7.2(j) impermissibly curtails non-misleading commercial speech.  Accordingly, we reverse that part of the district court's judgment which holds that Rule 4-7.2(j) did not infringe upon Mason's First Amendment rights.  We affirm, however, that part of the district court's judgment in favor of the Bar which rejects Mason's void-for-vagueness facial challenge to Rule 4-7.2(j).

AFFIRMED in part, REVERSED in part.

HILL, Senior Circuit Judge, concurring specially:

Inasmuch as the dissent by Justice Powell in *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) is not the precedent that binds us, and

Inasmuch as Judge Dubina has correctly analyzed and applied the binding precedent,

I concur.

---

[4]In addition, the availability of advisory opinions to gauge the application of Rule 4-7.2(j) to specific situations bolsters its validity. *See Arnett,* 416 U.S. at 160, 94 S.Ct. 1633 (noting the importance of advisory procedure in rejecting vagueness contentions); *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 580, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) ("It is also important in this respect that the Commission has established a procedure by which an employee in doubt about the validity of a proposed course of conduct may seek and obtain advice from the Commission and thereby remove any doubt there may be as to the meaning of the law ...").