**Lawrence ROSS, Plaintiff,**

v.

**CITY OF ORLANDO, Defendant.**

No. 6:00–cv–953–Orl–31KRS.

United States District Court,
M.D. Florida,
Orlando Division.

June 4, 2001.

Michael D. Jones, Orlando, FL, for plaintiff.

Martha Lee Lombardy, Ocoee, FL, for defendant.

## ORDER

PRESNELL, District Judge.

This cause came on for consideration without oral argument on the Defendant City of Orlando's Motion for Summary Judgment (Doc. 21, filed March 1, 2001).

*Background and Procedural History* [1]

█ The Plaintiff, Lawrence Ross, has lived within the city limits of Orlando since 1978. For most of that time, he has stored his 13 foot aluminum boat on a small trailer in his back yard. The trailer sits near his rear property line, screened from view (at least partially) by orange trees. Nothing in the record indicates that this storage violated any ordinance prior to 1995.

In that year, however, the city amended §§ 58.926 and 66.200 of the Code of the City of Orlando ("the Code"). Section 58.926, which previously had regulated commercial vehicle parking, was amended to include recreational vehicles within its ambit. That Code section now provides, in pertinent part:

Sec. 58.926. General Requirement.

*Recreational Vehicles.* Only recreational vehicles meeting the following standards and conditions shall be permitted to be parked within residential or office districts:

(a) Recreational vehicles parked within a completely enclosed private garage where the recreational vehicle is not parked in the required on-site parking space.

---

1. Most of the following factual background is taken from the City of Orlando's Statement of Undisputed Facts (Doc. 21), filed in conjunction with the motion for summary judgment.

The Plaintiff has indicated that the city's undisputed facts are, indeed, undisputed. *See* Doc. 33, filed March 29, 2001, at page 1.

(b) Recreational vehicles parked in side or rear yards provided:

—the recreational vehicle is ten and one-half (10½) feet or less in height and twenty-five feet or less in length, measured at the longest and highest points of the vehicle;

—the recreational vehicle is parked on a paved parking surface accessible from the street by an approved driveway;

—the recreational vehicle is screened from adjacent properties by a solid wall or solid fence at least six (6) feet in height;

—the recreational vehicle is not parked in the required on-site parking space.

The 1995 amendment also added the following definition to § 66.200:

*Vehicle, recreational:* A vehicular-type portable structure without permanent foundation, which can be towed, hauled or driven for recreational, camping, travel or temporary living accommodations and including, but not limited to, travel trailers, truck campers, camping trailers, self-propelled motor homes, and for the purposes of this Code, boats on trailers. (Effective December 1, 1995).

Section 66.200, which provides definitions for Chapters 58 through 66 of the Code, also contains the following definition, which predated (and was unaffected) by the 1995 amendment:

*Recreational Vehicle (or RV):* Any travel trailer, motor home, camping trailer or other similar vehicle which is occupied or intended for occupancy on a temporary, transient basis for travel, recreation or vacation purposes.

According to the Defendant, the "Recreational Vehicle" definition "should have been deleted from the code at the time of the 1995 amendment, but was not." Doc. 22 at page 3. According to the definitions provided by § 66.200, the Plaintiff's boat/trailer combo is a "Vehicle, recreational" but not a "Recreational Vehicle".

After receiving an anonymous complaint, the City inspected the Plaintiff's property. The inspector determined that the Plaintiff's storage of his boat and trailer violated § 58.926. After a hearing before the City Code Enforcement Board—during which the Plaintiff unsuccessfully sought an extension of time to prepare for the hearing, but apparently presented no other argument—the Plaintiff moved the boat and trailer to another location and filed the instant suit.

In his First Amended Complaint (Doc. 8, filed August 2, 2000), Ross seeks declaratory and injunctive relief[2] pursuant to 42 U.S.C. § 1983. Specifically, he seeks a determination that §§ 58.926 and 66.200 of the Code of the City of Orlando are unconstitutional either facially or as applied to him. Although the First Amended Complaint contains allegations that could be construed as raising a takings claim or a First Amendment overbreadth challenge, Ross indicated in his response (Doc. 33, filed March 29, 2001) to the motion for summary judgment that he is not pursuing any such causes of actions.

*Legal Standards*

The Plaintiff brings suit pursuant to 42 U.S.C. § 1983, which provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

---

**2.** Ross has since dropped his request for a preliminary injunction to prevent the Code Enforcement Board from forcing him to appear at a certain hearing.

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress". In the instant case, the Plaintiff alleges that he has been deprived of property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

*Summary Judgment*

A party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553

(citation omitted). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Vagueness*

██ The root of the vagueness doctrine is a rough idea of fairness. *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972)). As the Supreme Court of the United States has recognized, words inevitably contain germs of uncertainty. *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973). Unconstitutional vagueness arises when a statute or other legislative enactment produces so much uncertainty as to what conduct it applies to "that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Mason v. Florida Bar*, 208 F.3d 952, 958 (11th Cir.2000). Although generally raised in connection with criminal laws, the vagueness doctrine extends to non-legislative enactments and to those that do not carry criminal penalties. *See, e.g., Boyce Motor Lines v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (applying vagueness doctrine to regulations promulgated by Interstate Commerce Commission) *and Mason v. Florida Bar*, 208 F.3d 952 (11th Cir. 2000) (applying same to Florida Bar Rules). In determining whether a statute is void for vagueness, due process requires less exactitude in a statute that lacks criminal sanctions. *Horn v. Burns and Roe*, 536 F.2d 251, 254–55 (8th Cir.1976).

██ Vagueness is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing

**1364**

penal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning of what is prohibited. *Arnett,* 416 U.S. at 159, 160, 94 S.Ct. at 1647. Rather, the void-for-vagueness doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws. *Mason,* 208 F.3d at 959.

■ To establish that a statute is facially vague, a claimant must show that the statute is vague in the sense that no standard of conduct is specified at all-that it is impermissibly vague in *all* of its applications. *United States v. Nadi,* 996 F.2d 548, 550 (2d Cir.1993). To establish that the statute is unconstitutionally vague as applied, the claimant must show that in his particular circumstances the statute either (1) does not provide persons of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) does not provide sufficiently explicit standards for those who apply it. *Id.*

*Application and Analysis*

Before addressing the vagueness challenge itself, the Court first addresses two arguments made by the Defendant at the hearing on the motion for summary judgment: first, that the Plaintiff did not raise the specific vagueness challenge that the Court now addresses, and second, citing *McMurtry v. City of Largo,* 837 F.Supp. 1155 (M.D.Fla.1993), that the Plaintiff's failure to appeal the decision of the Code Enforcement Board to Florida state court

(as permitted by Fla. Stat. § 162.11) requires dismissal of his claim.

Neither argument is well-founded. Though not a model of clarity, the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. 33) makes the general vagueness claim explicitly at page 2–3 and the specific vagueness claim implicitly at page 6, where the Plaintiff complains that "[s]omewhere along the line 'boats on trailers' were tacked onto the definition" of recreational vehicles. Although the Plaintiff appears to assume that which the Defendant concedes did not occur—i.e., that the 1995 "Vehicles, recreational" amendment replaced the pre-existing definition of "Recreational Vehicle"—it is this Court's obligation to interpret the law as it is written, not as one party stipulates the law was written or should have been written. As written, the language of § 58.926 is at least arguably vague because of the conflict between the "Recreational Vehicle" and "Vehicle, recreational" definitions found in § 66.200, and the Plaintiff's reference to the "tacking on" of boats on trailers is sufficient to bring this issue before the Court.[3]

■ The assertion that the Plaintiff's failure to appeal the Board's decision precludes his § 1983 suit also falls short of the mark. Because of the paramount role that Congress has assigned to the federal courts to protect constitutional rights, parties raising federal claims under § 1983 are generally exempt from any requirement that they first exhaust state judicial or administrative remedies. *Patsy v.*

---

**3.** The Court also notes that the two interpretative guides that the City seeks to apply to this case—the generally recognized principles that the more specific expression controls over a more general expression, and that more recent legislative pronouncements control over older ones—are inapposite here. The definition added in 1995 is not more specific than the older one. It is more expansive. And even if it were more specific, there is nothing to indicate that the more specific definition has any application to § 58.926. Neither the specificity nor the age of the 1995 amendment can cure this shortcoming.

*Board of Regents of the State of Florida,* 457 U.S. 496, 500, 102 S.Ct. 2557, 2560–61, 73 L.Ed.2d 172 (1982). The Defendant argues that this case falls within an exception to that rule, articulated in *McMurtry v. City of Largo,* 837 F.Supp. 1155, 1158 (M.D.Fla.1993), that "a more stringent requirement [applies in] § 1983 actions involving deprivations of property." Without going into great detail, the City relies on this case to argue that cases involving property deprivations are subject to the exhaustion requirement found inapplicable in *Patsy.*

However, the main case upon which the *McMurtry* court relied for its finding of a more stringent requirement, *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), was an alleged regulatory takings case in which the property owner had failed to seek variances as to the imposition of the regulations to his property. *Id.,* 473 U.S. at 190–91, 105 S.Ct. 3108. The problem in *Williamson County* was not one of exhaustion of administrative remedies; it was one of finality:

> The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question of whether an administrative action must be final before it is judicially reviewable. While the policies underlying the two concepts overlap, the finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain

a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy*[4] concerned the latter, not the former.

*Williamson,* 473 U.S. at 193, 105 S.Ct. 3108 (internal citations omitted).

■ In the instant case, there is no argument that the decision of the Code Enforcement Board is not final. As such, *Patsy* controls, not *Williamson County,* and the Plaintiff's failure to appeal does not bar this § 1983 suit.

*Section 58.926 of the Code*

■ After reviewing the language of § 58.926, the Court cannot conclude that it is even notably vague, much less so vague that no standard of conduct is prescribed at all. Clearly, the ordinance prevents residents from parking certain vehicles on their residential property unless the residents meet certain requirements, and those requirements—that the vehicles be parked on a concrete slab, for example— are spelled out with a great deal of specificity. As enacted, the ordinance provides definitive standards of conduct in most situations and is therefore not unconstitutionally vague on its face. *See Nadi,* 996 F.2d at 550.

As applied in the instant case, however, the ordinance is more troubling. Although it appears that the City intended to add boats on trailers to the category of vehicles subject to § 58.926, the 1995 amendment did not do so. The "certain vehicles" regulated by § 58.926 are "Recreational Vehicles," not "Vehicles, recreational", *see* § 58.926, and as those terms are defined in § 66.200, the Plaintiff owns one of the latter, not one of the former. In plain terms, the City Code Enforcement Board

---

**4.** *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73

L.Ed.2d 172 (1982)

**1366**

found that the Plaintiff's boat on a trailer violated an ordinance that does not regulate boats on trailers.

 The issue for this Court therefore becomes whether this apparent misinterpretation by the Board rises to the level of a Constitutional violation? Although at first blush such might appear to be the case, this Court concludes that it does not. As explained above in analyzing the facial vagueness challenge, the ordinance is sufficiently specific that it provides both notice to ordinary persons regarding parking prohibitions and definite standards for use by those applying it, *see Nadi,* supra. This is true even though the Code Enforcement Board interpreted it incorrectly in this case. If the record contained evidence that the statute was being arbitrarily applied outside of this one instance, this Court might reach a different conclusion, as such a pattern might raise Constitutional concerns regarding arbitrary and capricious application of the law. However, it is well established that "a merely erroneous decision given by a state court in the regular course of judicial proceedings does not deprive the unsuccessful party of property without due process of law," *American Railway Express Co. v. Commonwealth of Kentucky,* 273 U.S. 269, 273, 47 S.Ct. 353, 355, 71 L.Ed. 639 (1927), and the Court concludes that this principle applies equally to the proceedings before the City Code Enforcement Board.

The Plaintiff's remaining contentions—such as, for example, his apparent argument that esthetic concerns are not a valid basis for Florida zoning ordinances (Doc. 33 at page 4)—do not warrant discussion.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant City of Orlando's Motion for Summary Judgment (Doc. 21, filed March 1, 2001) is **GRANTED.**

**DONE** and **ORDERED.**