HILL, Circuit Judge,
dissenting:
The majority upholds section 466.0282 against the claim that it unconstitutionally burdens commercial speech. Applying the Central Hudson test, the majority con-eludes that the state has a substantial interest in limiting Dr. Borgner’s right to advertise his accreditation by the AAID and ABOI/AD because such advertising is potentially misleading. The majority also holds that the statute’s requirement that Dr. Borgner’s advertising include a disclaimer (in all capital letters or some other, undescribed, manner “clearly distinguishable” from the rest of the advertisement) that the AAID and the ABOI/AD are not “bona fide” accrediting organizations satisfies the Central Hudson requirement that the restriction be no more extensive than necessary. Since I disagree with both of these conclusions, I must respectfully dissent.
1. The State’s Substantial Interest
Although commercial speech is accorded First Amendment protection[1], the state has a substantial interest in protecting the public from potentially misleading advertising. In re R.M.J. 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). The majority holds that section 466.0282 protects the public from misleading advertising by limiting the ability of dentists to advertise any credentials they may have from an organization not recognized by the American Dental Association (the “ADA”) or the Florida Board of Dentistry (the “Board”).[2] Unless such advertising is potentially misleading,[3] then, the statute does *1217 not serve a substantial state interest and unconstitutionally burdens commercial speech.
How does Dr. Borgner’s advertising of his AAID and ABOI/AD credentials mislead the public? The Board does not claim that these are not bona fide, nationally recognized organizations whose members may earn credentials reflecting extensive training and significant experience in the field of implant dentistry.[4] Indeed, the Board itself, prior to the legislature’s enactment of section 466.0282 in 1994, recognized both the AAID and the ABOI/ID as “bona fide organizations that credential dentists in the area of implant dentistry.” Borgner v. Brooks, 152 F.Supp.2d 1317, 1324 (N.D.Fla.2001). In recognizing that, under the Florida statutes then in effect, a dentist was free to advertise his certification from these organizations, the Board said nothing to suggest that such advertising might be misleading to the public. Id.
Now, however, the Board claims that such advertising is “misleading” because it may cause the public to believe incorrectly that the State of Florida has issued these credentials or officially approves the AAID and the ABOI/ID. The Board submitted to the district court the results of two surveys which it argued demonstrate empirically that such advertising misleads in this way.[5]
The district court found this evidence “altogether insufficient” to meet the Board’s substantial burden under Central Hudson to “demonstrate that the restrictions it places on speech target an identifiable harm and mitigate against such harm in a direct and effective manner.” 152 F.Supp.2d at 1322-23 (citing Mason v. The Florida Bar, 208 F.3d 952, 956 (11th Cir.2000) (state must be able to show that the regulation directly addresses an actual harm)). The district court held that, in *1218 the absence of any evidence that these organizations, previously recognized by the Board as bona fide, are, instead, sham organizations that make “no inquiry into the recipient’s fitness,” or “issue[ ] certificates indiscriminately for a price,” see Peel, 496 U.S. at 102, 110 S.Ct. 2281,[6] Dr. Borgner’s advertising of his certification by these organizations produced no identifiable harm. Id. at 1329.
The majority rejects this conclusion because, according to it, the district court focused on the “irrelevant” issue of whether these organizations are “ ‘sham organizations’ or were somehow illegitimate.” The majority concedes, then, that its earlier claim that “Florida’s desire to regulate dentists’ advertisements due to its interest in ‘protecting its citizens from unqualified and incompetent health care professionals,’ ” Majority Opinion at 1211, is not the real harm addressed by section 426.0282. If it were, the district court would be entirely correct that the statute does not mitigate that harm in any direct or effective manner.
According to the majority, “[t]he harm the state is seeking to mitigate is not that consumers will be harmed by AAID certified dentists, but that consumers may be led into thinking that such a dentist enjoys state recognition and approval.” Majority Opinion 1211-1212 n. 7.[7] The real issue in this case, therefore, is whether this interest is substantial enough to pass constitutional muster. I do not believe that the Board has demonstrated that it is.
It is clearly not enough for the Board to identify some way — any way — in which Dr. Borgner’s advertisements might confuse. As we said in Mason, “[ujnfamiliarity is not synonymous with misinformation.” 208 F.3d at 957. See also Peel, 496 U.S. at 102-03, 110 S.Ct. 2281 (“there is no evidence that the consumers ... are misled if they do not inform themselves of the precise standards under which claims of certification are allowed”). In order to offend the Constitution, commercial speech must produce some “identifiable harm” that is significant enough to permit the state to mitigate it. Mason, 208 F.3d at 957. In this case, the only “harm” the Board has identified as proceeding from potential consumer confusion of the AAID credential with state certification is that the advertising dentist might gain a “competitive edge.”[8] I do not think that this harm is constitutionally significant.[9] As a result, I would affirm the district court’s holding that Florida Statute section 466.0282 has not been shown to target a *1219 genuine threat of identifiable harm substantial enough to justify the restrictions it places on Dr. Borgner’s protected speech.[10]
2. The Statute’s Burden
I also believe that the statute fails to meet the fourth requirement of Central Hudson which is that it not be “more extensive than is necessary” to mitigate the harm identified by the state. 447 U.S. at 566, 100 S.Ct. 2343. A consumer reading the required statutory disclaimer that the AAID is “NOT RECOGNIZED AS A BONA FIDE SPECIALTY ACCREDITING ORGANIZATION BY THE AMERICAN DENTAL ASSOCIATION OR THE FLORIDA BOARD OF DENTISTRY” may well conclude that the AAID is a bogus organization or diploma mill — neither of which conclusions is justified. In the absence of some demonstration that this confusion is not at least as likely as the confusion that AAID is a state-sponsored organization, I believe the statute fails the fourth prong of the Central Hudson test.
The “disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information.” Peel, 496 U.S. at 108, 110 S.Ct. 2281. I believe that today’s decision does not advance this principle, and for all the reasons given above, I respectfully dissent.

. Although the majority writes that the statute permits Dr. Borgner to include his credentials from the AAID and the ABOI/ID in his advertising, I agree with the district court that the inartful construction of the statute, at a minimum, has a chilling effect on that speech, and, at worst, confers an empty right to advertise that one is accredited by an organization that the state has branded not "bona fide.”

.The Board concedes that such advertising is not inherently misleading since Dr. Borgner is, in fact, accredited by these organizations. See Peel v. Attorney Registration and Disciplinary Comm'n of Ill., 496 U.S. 91, 101, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990) (holding that advertising of such certifications is a verifiable fact, and is not inherently misleading). The Board contends and the majority holds, however, that this advertising is potentially misleading since it may lead the consumer to believe that these organizations are recognized by the ADA or the Board. Cf. *1217 Peel, id. at 105, 105 n. 13, 110 S.Ct. 2281 ("We reject the paternalistic assumption that the recipients of [such advertising] are no more discriminating than the audience for children's television.... We prefer to assume that the average consumer, with or without knowledge of the legal profession, can understand a statement that certification by a national organization is not certification hy the State, and can decide what, if any, value to accord this information.”)

. In order to qualify for AAID's “Associate Fellow” status, a dentist must (1) complete at least 300 hours of continuing education in implant dentistry, including at least 150 hours of clinical implant education; (2) pass a written examination; and (3) successfully complete an oral/clinical treatment case examination. Some of the requirements for the "Fellow” credential include (1) 5 or more years of experience in the practice of implant dentistry; (2) completion of 100 hours of continuing education in implant dentistry in addition to the 300 hours required for Associate Fellow status; (3) completion of dental implant treatment of at least 50 cases; (4) successful completion of an oral examination; and (5) satisfactory presentation of ten cases to the AAID's Admissions and Credential Board. The AAID has approximately 2200 members, roughly 500 of whom have earned one or both of these credentials.

. In this regard, I note that these surveys were both untimely and incompletely filed. Although it was "sympathetic to Plaintiffs' complaints about Defendants’ untimely disclosures,” the district court declined to grant plaintiffs' motion to strike the surveys, noting that "[a]ny prejudice to Plaintiffs from lack of opportunity to meet Defendants' late-filed surveys could be cured by permitting Plaintiffs to take additional depositions at Defendants' expense." The district court did not so order, however, because it found that the surveys were "altogether insufficient to satisfy Defendants’ burdens under Central Hudson.” It appears to me, therefore, that, even if the results claimed for the surveys are sufficient to establish that the commercial speech at issue is misleading, as the majority opinion holds, this case should be remanded to the district court for a determination of the plaintiffs’ motion to strike the surveys before the entry of final judgment.

. In Peel, the Supreme Court struck down an Illinois statute prohibiting attorneys from advertising their certification by National Board of Trial Advocacy (the ''NBTA”) where there was no showing that the NBTA was not a reputable, credible certifying organization or that the public would be misled in any way by a lawyer advertising his certification by it. 496 U.S. at 102, 110 S.Ct. 2281.

. I note that anyone interested can easily ascertain whether the organizations certifying Borgner are state approved.

. The Board's expert rendered the following opinion about the findings of the surveys:
These findings indicate that advertisement about "certification” and/or "specialization” in implant dentistry — regardless of whether respondents know the credentialing agency or not — will persuade much of the public that such dentists are worthy, capable, and trustworthy. Such advertising will confer a professional advantage upon dentists who advertise themselves as credentialed by organizations that are not accepted by the American Dental Association, (emphasis added)
The district court concluded the "survey does not establish that this competitive edge is unmerited.”

.Indeed, I believe that the state has an interest in protecting competition in the marketplace for dentistry.

. Of course, the state does have a substantial interest in preventing professionals from advertising credentials granted by bogus or sham organizations. The Board has conceded, and the majority does not hold, however, that this interest is present in this case.